## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CHICKPLEASE, LLC, an Illinois limited liability company, | CASE NO. |
| Plaintiff, | JUDGE |
| v. | **COMPLAINT** |
| SAHAR SHALASH, an Ohio citizen, | |
| Defendant. | |

The Plaintiff, Chickplease, LLC, by and through the undersigned attorneys, respectfully states as follows for its Complaint against the Defendant, Sahar Shalash.

## THE PARTIES

1. Plaintiff Chickplease, LLC ("Chickplease"), is an Illinois limited liability company. Chickplease is a distributor of chickpeas grown in the United States.

2. The sole member of Chickplease is Nature's Pulses Co LLC, a Delaware limited liability company.

3. The sole member of Nature's Pulses Co LLC is Emad Zaibak, a resident of Illinois.

4. Therefore, Chickplease, LLC, is a citizen of Illinois.

5. Defendant Sahar Shalash ("Ms. Shalash") is an individual and a resident of the State of Ohio.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties (there being only one plaintiff and only one defendant, each citizens of different states) and the matter in controversy exceeds $75,000.

7. Venue is proper in the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(1), because Ms. Shalash resides in the Southern District of Ohio, in the area served by the Eastern Division.

## FACTUAL ALLEGATIONS

8. Chickplease operates as a distributor of chickpeas, also known as garbanzo beans, across the United States.

9. Chickplease contracts with various buyers (each a "Chickplease Client," collectively "Chickplease Clients"). Chickplease only contracts with buyers who will conduct, at a minimum, $1,000,000 worth of transactions per year with Chickplease.

10. Chickplease has warehouses in multiple states, including Illinois and California. Chickplease's headquarters is in Illinois.

11. Ms. Shalash is a real estate broker in Ohio.

12. On or before August 2021, Ms. Shalash began communicating with Chickplease Clients to threaten and/or harass them for doing business with Chickplease.

13. Ms. Shalash has no business interest in, for, or against Chickplease or any Chickplease Clients.

14. Tareq Sultan ("Mr. Sultan") is one of the shareholders of Royal Ace Foods, Inc. ("Royal Ace Foods"), a California corporation.

15. Mr. Sultan is also a contractor with Royal Ace Foods.

16. Royal Ace Foods is an independent contractor with Chickplease.

17. Royal Ace Foods facilitates business between Chickplease and prospective Chickplease Clients.

18. Mr. Sultan is an agent of Chickplease and is also a commodity trader under Chickplease's name and USDA certificates.

19. Several Chickplease Clients and potential Chickplease Clients are familiar with Mr. Sultan, through his role as a contractor of Royal Ace Foods, as an individual who facilitates business for Chickplease and as an agent of Chickplease.

20. Therefore, Chickplease clients associate Mr. Sultan with Chickplease.

21. Ms. Shalash is familiar with Mr. Sultan's role on behalf of Chickplease and is aware that Chickplease Clients associate Mr. Sultan with Chickplease.

22. On or around February 2022, Ms. Shalash attended a court hearing of Tareq Sultan ("Mr. Sultan") in the Superior Court of California, County of San Joaquin.

23. At the court hearing of Mr. Sultan, Ms. Shalash took a picture of Mr. Sultan in the courtroom, in violation of Local Rule 1-108(B) and (E) of the Superior Court of California, County of San Joaquin (2022).

24. After Ms. Shalash took the picture in court of Mr. Sultan, the judge presiding over the hearing admonished her not to take pictures in the courtroom.

25. Beginning on or around February 2022, Ms. Shalash texted the picture she took of Mr. Sultan in court to one or more Chickplease Clients.

26. Ms. Shalash sent the picture of Mr. Sultan to the Chickplease Clients because she knew of their contractual relationship with Chickplease and of the prospective business opportunities between Chickplease and the Chickplease Clients.

27. Beginning on or around August 2021, Ms. Shalash has harassed and/or threatened owners and principals of various Chickplease Clients for doing business with or associating with Chickplease.

28. At least three companies with which Chickplease does business, including at least two Chickplease Clients, are known by Chickplease to have been harassed and/or threatened by Ms. Shalash. Upon information and belief, Ms. Shalash has harassed and/or threatened additional Chickplease Clients; however, their identities and total number is unknown.

29. Among the Chickplease Clients Ms. Shalash threatened is Pasha Foods Distribution USA, Inc. ("Pasha").

30. Pasha had a Commodity Sales Contract with Chickplease, executed in November 2021, which was meant as a trial run of Chickplease's services ("Pasha Trial Contract").

31. Ms. Shalash knew of the business and contractual relationship between Pasha and Chickplease.

32. Ms. Shalash intended to induce Pasha to breach its contract with Chickplease and cease business with Chickplease. Ms. Shalash intended to accomplish this by communicating in a harassing or threatening manner with Pasha.

33. During the term of the Pasha Trial Contract, Pasha told Chickplease to pause sending deliveries to Pasha, specifically stating that it wished to pause business with Chickplease due to statements made by Ms. Shalash.

34. During this pause of deliveries to Pasha, Chickplease lost approximately $150,000 in revenue due to Pasha refusing to order products from Chickplease for a month.

35. Pasha and Chickplease also executed, in January of 2022, an agreement for the sale of 2,112,000 pounds of chickpeas at $62.00 per 100 pounds, for a total of $1,309,440 ("Pasha Full Contract").

36. Pasha rescinded and breached the Pasha Full Contract due to Ms. Shalash's statements, threats and/or harassment.

37. The principal of Pasha explained to Chickplease that Pasha would not do business with them because Pasha did not want to be involved with a company that has an individual like Ms. Shalash related to the business.

38. Due to Ms. Shalash's statements and threats, Pasha has stated that it no longer wishes to do business with Chickplease in the future.

39. Ms. Shalash similarly threatened another Chickplease Client, American Importing International, LLC ("A.I.I."), for doing business with Chickplease.

40. After a trial contract, A.I.I. executed a letter of intent with Chickplease, agreeing to execute a full contract for approximately $1,800,000 of chickpea deliveries.

41. Ms. Shalash knew of the contractual and business relationship between A.I.I. and Chickplease.

42. Ms. Shalash intended for A.I.I. to breach its agreement with Chickplease and to cease future business with Chickplease. Ms. Shalash intended to accomplish this by sending harassing and/or threatening communications to A.I.I.

43. Due to the statements and threats from Ms. Shalash, A.I.I. has refused to execute a full agreement pursuant to the letter of intent.

44. On or about August 16, 2021, Ms. Shalash approached an employee of Chickplease ("Employee A") at the California Warehouse.

45. When Ms. Shalash approached Employee A of Chickplease at the California Warehouse, Ms. Shalash was on the private property of Chickplease.

46. Ms. Shalash attempted to bribe Employee A by offering to pay the employee money to find out information about Mr. Sultan.

47. When Employee A refused to provide information about Mr. Sultan, Ms. Shalash attempted to pay Employee A money in exchange for Employee A keeping silent about Ms. Shalash's actions on the property.

48. Employee A reported the events of August 16, 2021 to Chickplease and to the police.

49. There are signs on and around the property of the California Warehouse stating that it is private property.

50. Due to the actions of Ms. Shalash, Employee A did not return to work after August 16, 2021, until August 24, 2021.

51. Employee A was the only employee at the California Warehouse at the time who was trained to use the forklift, rendering Chickplease without anyone who could use the forklift at the California Warehouse between August 17, 2021, and August 23, 2021.

52. After the incident on August 16, 2021, Ms. Shalash subsequently trespassed again onto the property of the California Warehouse.

53. Another company with which Chickplease does business is Salim Baker & Co., owned by an individual named Salim Baker.

54. Salim Baker & Co. is a third-party distributor of the products of Chickplease.

55. Salim Baker & Co. routinely drives its vehicles to Chickplease's warehouse in California (the "California Warehouse").

56. On a date subsequent to the August 16, 2021, trespass, while Salim Baker was loading his truck at the California Warehouse, Ms. Shalash approached Salim Baker on the property of the California Warehouse.

57. On the property of the California Warehouse, Ms. Shalash attempted to bribe Salim Baker by attempting to pay him for information about Mr. Sultan.

58. Salim Baker reported this event to Chickplease.

59. Separately, Ms. Shalash texted Salim Baker, stating that Mr. Sultan is in custody, in an attempt to dissuade Salim Baker from engaging in business with Chickplease.

## COUNT I
### Tortious Interference with Contractual Relations

60. Chickplease repeats and realleges the allegations set forth in Paragraph 1 through 59 as if fully set forth herein.

61. Chickplease had a valid and enforceable contract with Pasha.

62. Ms. Shalash was aware of the contractual relationship between Chickplease and Pasha.

63. Through her statements to the owner of Pasha, Ms. Shalash intentionally caused Pasha to breach its contract with Chickplease by rescinding its executed contract for the delivery of chickpeas, for which Pasha would have paid $1,309,440.

64. Ms. Shalash had no justification for causing the breach of contract by Pasha and her actions in furtherance of the breach were malicious.

65. Chickplease suffered damages of at least $1,309,440 for the breach.

66. Chickplease had a valid and enforceable contract with A.I.I. in the form of a letter of intent.

67. Ms. Shalash was aware of the nature of the contractual relationship between Chickplease and A.I.I.

68. Ms. Shalash made threats and statements to the principal of A.I.I. with the intent of causing A.I.I. to terminate its letter of intent with Chickplease.

69. Due to Ms. Shalash's statements to the principal of A.I.I., A.I.I. breached its contract with Chickplease by failing to enter into a full agreement that would have consisted of the sale of chickpeas for an amount to be determined at trial.

70. Ms. Shalash had no justification for causing the breach of contract by A.I.I. and her actions in furtherance of the breach were malicious.

71. Chickplease suffered damages of an amount to be determined at trial for the breach of the contract with A.I.I.

WHEREFORE, Plaintiff, Chickplease, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant, Sahar Shalash, and grant Chickplease, LLC, the following relief:

A. Compensatory damages greater than $1,309,440, but in an amount that will be determined at trial;

B. Punitive damages in an amount to be determine at trial;

C. Attorney's fees;

D. Prejudgment interests;

E. Costs under Federal Rule of Civil Procedure 54(d)(1); and

F. Any further relief that the Court deems to be necessary or appropriate under the circumstances.

## COUNT II
### Tortious Interference with Prospective Advantage

72. Chickplease repeats and realleges the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

73. Chickplease had the expectation of ongoing business with Pasha.

74. Ms. Shalash made threats and statements to Pasha with the intent of causing Pasha to refuse to conduct further business with Chickplease.

75. Ms. Shalash had no justification for inducing Pasha to refuse to conduct further business with Chickplease.

76. Ms. Shalash's actions in furtherance of inducing Pasha to refuse to conduct further business with Chickplease were malicious.

77. Based on Ms. Shalash's threats and statements, Pasha has refused to conduct further business with Chickplease, resulting in damages to Chickplease.

78. Furthermore, Chickplease had a reasonable expectation of entering into a full agreement with A.I.I. wherein A.I.I. would purchase products from Chickplease, as well as other future business with A.I.I.

79. The reasonable expectation of a future contract with A.I.I. was further solidified by the letter of intent between Chickplease and A.I.I.

80. Due to the statements and threats from Ms. Shalash, A.I.I. has chosen not to enter into a new contract with Chickplease, causing damages to Chickplease.

81. Ms. Shalash intended for A.I.I. to cease doing business with Chickplease.

82. Ms. Shalash had no justification for inducing A.I.I. to refuse to conduct further business with Chickplease.

83. Ms. Shalash's actions in furtherance of inducing A.I.I. to refuse to conduct further business with Chickplease were malicious.

84. Ms. Shalash's conduct was intentional and malicious; it was intended to harm Chickplease with no benefit to her.

85. Alternatively, Ms. Shalash's actions pled herein were conducted with a wanton disregard for the rights of Chickplease.

WHEREFORE, Plaintiff, Chickplease, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant, Sahar Shalash, and grant Chickplease, LLC, the following relief:

A. Compensatory damages in an amount to be determined at trial, in an amount exceeding $75,000.00;

B. Punitive damages in an amount to be determined at trial;

C. Attorney's fees;

D. Prejudgment interests;

E. Costs under Federal Rule of Civil Procedure 54(d)(1); and

F. Any further relief that the Court deems to be necessary or appropriate under the circumstances.

## COUNT III
**Trespass to Real Property**

86. Chickplease repeats and realleges the allegations set forth in Paragraphs 1 through 85 as if fully set forth herein.

87. By coming onto the property of Chickplease at the California Warehouse, Ms. Shalash trespassed onto the property of Chickplease.

88. Ms. Shalash did not have permission to enter the property of Chickplease.

89. There was signage on the property of the California Warehouse stating that it was private property.

90. After the August 16, 2021 incident, Ms. Shalash again entered onto the property.

91. Ms. Shalash's trespassory conduct was done with malice.

WHEREFORE, Plaintiff, Chickplease, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant, Sahar Shalash, and grant Chickplease, LLC, the following relief:

A. Compensatory damages in an amount to be proven at trial;

B. Punitive damages in an amount to be proven at trial;

C. Attorney's fees;

    D.    Costs under Federal Rule of Civil Procedure 54(d)(1); and

    E.    Any further relief that the Court deems to be necessary or appropriate under the circumstances.

## COUNT IV
### Injunctive Relief

92.    Chickplease repeats and realleges the allegations set forth in Paragraphs 1 through 91 as if fully set forth herein.

93.    Monetary damages are insufficient to protect Chickplease from the damage to its reputation and business from Ms. Shalash's ongoing statements, harassment, and threats to companies with which Chickplease does business.

94.    Monetary damages are insufficient to protect the employees of Chickplease and other persons lawfully on the property of Chickplease from harassment by Ms. Shalash on the property of Chickplease.

95.    Ms. Shalash has no legitimate interest in communicating with the companies with which Chickplease does business or seeks to do business, nor does Ms. Shalash have a legitimate interest in being on the property of Chickplease.

WHEREFORE, plaintiff, Chickplease, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant, Ms. Shalash, and grant Chickplease, LLC, the following relief:

    A.    Enter a temporary, preliminary, and permanent injunction preventing Ms. Shalash from speaking with the companies with which Chickplease does business or seeks to do business;

    B.    Enter a temporary, preliminary, and permanent injunction preventing Ms. Shalash from entering onto the property of Chickplease;

    C.    Costs under Federal Rule of Civil Procedure 54(d)(1); and

D. Any further relief that the Court deems to be necessary or appropriate under the circumstances.

Dated: June 17, 2022

                                Respectfully submitted,

                                */s/ Michael W. Sandner*

Michael W. Sandner (0064107)
PICKREL, SCHAEFFER & EBELING CO., LPA
2700 Stratacache Tower
Dayton, Ohio 45423
T: (937) 223-1130 / F: (937) 223-0339
E: msandner@pselaw.com
*Trial Attorney for Plaintiff,*
*Chickplease, LLC*

Michael K. Goldberg
Jenna E. Milaeger
GOLDBERG LAW GROUP, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, Illinois 60606
P: 312-930-5600
F: 312-930-0944
Email: mike@goldberglawoffice.com
Email: jenna@goldberglawoffice.com
Outside Counsel for Chickplease, LLC